UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOANNE THOMAS, | ) | |
| | ) | CASE NO. 1:10-CV-80 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MAGISTRATE JUDGE McHARGH** |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner | ) | **MEMORANDUM OPINION** |
| of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 18). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Joanne Thomas's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

In November 2004, Joanne Thomas ("Plaintiff" or "Thomas") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income alleging that she became disabled on March 13, 2003. (Tr. 56-58, 301-03). Thomas's applications for benefits were denied initially and upon reconsideration. (Tr. 26, 28, 30, 304). She timely requested and was granted an administrative hearing. (Tr. 42, 44-45, 48-52).

On September 20, 2007, Administrative Law Judge Mark Carissimi ("ALJ Carissimi" or the "ALJ") held a hearing during which Plaintiff and vocational expert, Mr. Gene Burkhammer, testified. (Tr. 308-39). On October 23, 2007, ALJ Carissimi issued a written decision (the "2007 decision") denying Plaintiff's applications for benefits. (Tr. 14-23). Plaintiff requested review of ALJ Carissimi's decision from the Appeals Council, but her request was denied. (Tr. 4-6). Subsequently, Thomas sought judicial review from this Court.[1]

Plaintiff attacked the ALJ's decision on three grounds. First, Plaintiff alleged that ALJ Carissimi failed to properly evaluate her complaints of disabling pain. Second, Thomas argued that the ALJ failed to properly analyze the opinions of her treating physicians. And finally, Thomas alleged that substantial evidence in the record did not support the hypothetical question that the ALJ posed to the vocational expert. On February 11, 2009, Magistrate Judge William H. Baughman, Jr. ("Magistrate Baughman") issued his Memorandum Opinion and Order remanding the case back to the Social Security Administration. (Tr. 372-81).

Magistrate Baughman characterized Plaintiff's appeal as attacking the ALJ's RFC finding in two respects. First, Plaintiff objected to the ALJ's failure to find limitations on her ability sit, stand and walk. Second, Thomas asserted that ALJ Carissimi's RFC should have included limitations on reaching, handling, and feeling. Based upon Magistrate Baughman's review of the record, he affirmed the ALJ's decision to withhold any limitations on Plaintiff's ability to sit, stand and walk as the record did not warrant such restrictions. However, Magistrate Baughman concluded that ALJ Carissimi's finding that Plaintiff could engage in frequent overhead reaching and handling

---

[1]During Plaintiff's appeal process, she reapplied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income. (Tr. 408-15). These applications were denied initially and later consolidated with Plaintiff's initial applications. (Tr. 385-94).

2

and fingering with her left arm, was not supported by the substantial evidence in the record. He ruled that remand was necessary in order for the ALJ to determine the degree of limitation in Plaintiff's left arm and hand, and whether such limitation would prevent the Commissioner from satisfying his burden at step five of the sequential evaluation process. (Tr. 378-81). Although Magistrate Baughman intimated that any restrictions on Plaintiff's use of her left shoulder and hand would not effect the vocational expert's ability to identify a substantial number of jobs meeting Plaintiff's RFC, the judge declined to substitute his speculation for substantial evidence in the record. (Tr. 380). Therefore, Magistrate Baughman's remand order directed the ALJ to address these limitations. Additionally, the judge admonished the ALJ to request a medical expert to testify at the subsequent hearing in order to determine the degree of Plaintiff's limitation in her left extremity. *Id.*

Following the issuance of Magistrate Baughman's order, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with Magistrate Baughman's order. (Tr. 382-84). Therefore, on July 26, 2009, ALJ Carissimi presided over a second hearing for Plaintiff.[2] (Tr. 699-729). Thomas and her attorney, Rebecca Gillissie, were both present at the second proceeding. (Tr. 699). Vocational Expert, Mr. Ted Macy (the "VE"), and medical expert, Dr. Malcolm Brahms ("the ME" or "Dr. Brahms") were also present and testified. On August 19, 2009, ALJ Carissimi issued an unfavorable decision (the "2009 decision"), denying Plaintiff's applications for benefits. (Tr. 350-63). Thomas sought review of ALJ Carissimi's second decision from the Appeals Council (Tr. 343-46), but it declined to assume jurisdiction over

---

[2]Because both Plaintiff's first and second applications for benefits asserted a disability onset date of March 13, 2003, the applications were consolidated for the second hearing before ALJ Carissimi. (Tr. 350).

3

Plaintiff's case thereby making ALJ Carissimi's 2009 decision the final decision of the Commissioner. (Tr. 340-42). Thomas now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

Plaintiff, born on June 2, 1958, was fifty-one years old on the date of ALJ Carissimi's second decision and therefore considered a "person closely approaching advanced age" for Social Security purposes. (Tr. 301); *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). Thomas has a tenth grade education, but has not completed any vocational training. (Tr. 118). She has past experience working as a hair stylist, factory laborer and as a seamstress. (Tr. 68).

## II. ALJ'S DECISION

After completing a review of the record, ALJ Carissimi determined that Thomas was not disabled under the Social Security regulations. (Tr. 350-63). At the beginning of his decision, the ALJ acknowledged that this Court had reversed his first decision and remanded Thomas's application for a second review. (Tr. 350). ALJ Carissimi specifically noted that on remand he was to "reconsider [his] residual functional capacity finding with respect to limitations on the use of [Plaintiff's] left extremity." *Id.* The ALJ's decision reflects that he adhered to Magistrate Baughman's admonishment to seek medical expert testimony during Plaintiff's second hearing. (*See* Tr. 359-60). At step one of the sequential evaluation analysis,[3] the ALJ found that Thomas had not

---

[3] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

4

engaged in substantial gainful activity since her alleged onset date of March 13, 2003. (Tr. 353).[4]

At step two, ALJ Carissimi ruled that Thomas suffered from the following severe impairments: cervical spondylosis, left shoulder tendinopathy and asthma. *Id.* But, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 354).

Before moving to step four, ALJ Carissimi found that Thomas retained the residual functional capacity ("RFC"):

> [T]o perform a range of light work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, she can lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; she can perform occasional bilateral overhead reaching; and she must avoid concentrated exposure to smoke and fumes.

(Tr. 355). In explaining the basis for his RFC finding, ALJ Carissimi mentioned that he gave great weight to the opinions of the ME regarding the limitations associated with Plaintiff's use of her left

---

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

[4]Although Plaintiff worked in 2007, her earnings did not rise to the level of substantial gainful activity. (Tr. 353).

arm. (Tr. 359-360). The ALJ noted that the ME reviewed the entire record, including recent electromyography ("EMG") testing, and did not find any restrictions with regard to Thomas's ability to handle or finger with her left hand, other than that she could not perform tasks which required bilateral overhead lifting on a repetitive basis. *Id.* Next, at step four, the ALJ determined that Thomas could return to her past work as a hair stylist or seamstress, based upon the VE's acknowledgment that an individual with Plaintiff's RFC would be able to perform these types of tasks. (Tr. 362).

## III. **DISABILITY STANDARD**

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## IV. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if

6

the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. <u>ANALYSIS</u>

Plaintiff asserts three assignments of error with regard to ALJ Carissimi's second decision: 1) the ALJ failed to properly analyze her complaints of disabling pain; 2) the ALJ improperly weighed the opinions of her treating physicians; and 3) the RFC set forth in the ALJ's hypothetical question posed to the VE was not supported by the record. The issues Thomas now raises to the Court are identical to the issues she raised in her appeal of the ALJ's first decision. (*See* Case No. 1:08-CV-830, Doc. 15).

### 1. <u>Disabling Pain</u>

This circuit follows a two-step process in evaluating a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine

whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id*. The ALJ should consider the following factors in evaluating a claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; statements from the claimant and the claimant's treating and examining physicians; and any other factors concerning functional limitations due to symptoms. *Id*.; *See Felisky*, 35 F.3d at 1039-40; *see also* SSR 96-7p, 1996 WL 374186. While reviewing the ALJ's decision, it is important to note that this Court must accord great deference to the ALJ's credibility determinations, as the ALJ had the opportunity to observe the claimant's demeanor during the hearing. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In the case *sub judice*, the undersigned finds that ALJ Carissimi reasonably evaluated Thomas's claims of disabling pain pursuant to the two-step analysis utilized in this circuit. Plaintiff argues that her numerous magnetic resonance imaging ("MRI") and EMG test results and x-rays demonstrate that her pain is disabling. But notably, in evaluating the evidence at the first step in the analysis, ALJ Carissimi credited the various test results in the record, and found that Plaintiff's impairments "could reasonably be expected to cause [Plaintiff's] alleged symptoms." (Tr. 356). Thus, Plaintiff's recital of the medical evidence in her file reflecting the objective evidence supporting her complaints of pain was reasonably considered by the ALJ, in that he found that such

8

evidence satisfied the initial step of the analysis. Yet, this objective evidence alone does not entitle Plaintiff to benefits.

Under the second prong of the two-step analysis, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's ability to work. It was under this prong, that ALJ Carissimi found that Plaintiff's claim failed. The ALJ explained that Thomas's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not credible". (Tr. 356). Thomas argues that ALJ Carissimi neglected to properly analyze her pain under the two-step process and failed to explain why he found her statements regarding her pain to be incredible.

The undersigned finds that the ALJ reasonably discounted Plaintiff's credibility at the second step of the analysis. At the onset, the Court notes, as Defendant correctly pointed out, that Plaintiff's attack of the ALJ's finding on this issue quotes and cites to an excerpt from ALJ Carissimi's 2007 decision which was vacated by the Appeals Council. (*See* Pl.'s Br. at 16; Tr. 19). Therefore, to the extent that Plaintiff is challenging the findings contained within the ALJ's vacated opinion, Plaintiff's challenges are moot as ALJ Carissimi's 2007 decision is not currently before the Court on review.

Even assuming *arguendo*, that Plaintiff intended to impugn ALJ Carissimi's 2009 decision, Plaintiff's challenge fails because the ALJ articulated sufficient reasons for discrediting her testimony. Although the ALJ's discussion of Plaintiff's credibility is intertwined with his discussion of the medical evidence, it nevertheless offers sufficient grounds for discounting the severity of Thomas's pain. For example, the ALJ noted that despite her claimed pain, Thomas admitted to working as a hair dresser "every now and then", living independently, and grocery shopping with the assistance of her landlord. (Tr. 355, 358). Indeed, the ALJ noted that in as

recently as 2009, Plaintiff was working as a hair dresser although she said that it was difficult for her to keep her left arm elevated at work. (Tr. 359, 626). Additionally, ALJ Carissimi explained that he did not find Plaintiff's pain to be disabling because the ME testified that Plaintiff's condition only caused mild chronic left radiculopathy, which would only prevent Thomas from performing repetitive bilateral overhead reaching and lifting above shoulder level. The ALJ explained that the ME was privy to Plaintiff's entire file and was in the best position to render an opinion on the extent of Plaintiff's limitations. ALJ Carissimi also noted that Plaintiff's own treating physician, Dr. Deborah Blades, remarked that Thomas had good strength and improvement in her range of motion and pain. (Tr. 358). Accordingly, the undersigned finds that the ALJ's decision to discount Plaintiff's testimony regarding the intensity, persistence and limiting effects of her impairments was supported by the record.

### 2. Treating Physician

It is well-recognized that the ALJ must give special attention to the findings of the claimant's treating sources pursuant to the so-called "treating source doctrine". *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). A treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or, are inconsistent with the other substantial evidence in the record. *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table). Even when the treating physician's opinions are not entitled to controlling weight, the ALJ must

apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544. These factors include the length of the treatment relationship, the supportability of the opinion, and the physician's specialization. 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). The regulations also mandate that the ALJ must articulate "good reasons" for the weight accorded to a treating source's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Thomas maintains that ALJ Carissimi failed to adhere to the treating source rule by failing to "articulate why he rejected the[] opinions [of Plaintiff's treating sources]" and instead accepted "the opinion of [the] consultative examiner he based his decision on". (Pl's Br. at 17). Plaintiff's characterization of the ALJ's decision is troubling in two respects. First, it is clear to the Court that Plaintiff's argument here is again based on her condemnation of the findings reached within the ALJ's 2007 decision. Although Thomas did not expressly cite to the ALJ's first decision, a portion of her argument quotes ALJ Carissimi's original decision,[5] and her depiction of the ALJ's written opinion[6] positively convinces the Court that Plaintiff's attacks are improperly directed at the ALJ's first decision, and not at ALJ Carissimi's 2009 opinion.[7]

---

[5] Plaintiff's brief quotes the ALJ as stating, "[i]n making my decision I relied upon the opinions of Dr. Smith (consultative examiner) and the State consultant." This statement appears in the 2007 decision. (*Compare* Pl.'s Br. at 19 *with* Tr. 21).

[6] Plaintiff described the ALJ's opinion as only accepting the opinion of one consultative examiner (Dr. Smith), providing a three page recitation of the evidence, and explaining the evidence upon which his decision was based in two paragraphs. A review of the 2007 decision, demonstrates that Plaintiff brief was referring to it, rather than the 2009 decision. (*Compare* Pl.'s Br. at 17-18 *with* Tr. 19-21).

[7] Plaintiff also attacks the ALJ's decision for "completely fail[ing] to address" the opinions of Dr. Katz, but ALJ Carissimi's 2009 decision devotes four paragraphs to discussing Dr. Katz's opinions, whereas the 2007 omitted any discussion of this medical opinion because Plaintiff had not yet established care with Dr. Katz at the time the ALJ rendered his opinion. (*See* Tr. 361).

11

Secondly, the Court was further persuaded of Plaintiff's error and additionally troubled by the overwhelming similarities between the brief Plaintiff filed in her original appeal (Case No. 08-CV-830, Doc. 15) and the brief Plaintiff filed in the instant case. Much of the language contained within her arguments attacking 1) the ALJ's treatment of her treating physician's opinions, and 2) the hypothetical question to the VE, is identical to the language Plaintiff used in her current brief. These similarities signify to the Court that Plaintiff's present challenges erroneously target the ALJ's initial, vacated decision. They also suggest that Plaintiff's counsel may not have conducted a thorough review of the present record. Regardless, Plaintiff's arguments are not compelling.

In ALJ Carissimi's decision, he assigned great weight to the testimony of the ME and discounted several of the opinions offered by Plaintiff's treating physicians based upon the ME's testimony. As the Commissioner highlighted, Plaintiff's brief failed to acknowledge the ME or the significance of his testimony anywhere in her brief aside from briefly mentioning that a medical expert testified at her second hearing. (*See* Pl.'s Br. at 2). This omission is detrimental to Plaintiff's argument because the ME's testimony provided substantial evidence to support the ALJ's decision and also justified the ALJ's decision to assign reduced weight to Plaintiff's treating physicians' opinions.

ALJ Carissimi's opinion explains that he gave great weight to the ME's findings because Dr. Brahms, as an orthopedic surgeon, had expertise in the areas relative to Plaintiff's impairments. The ALJ also explained that the ME was the only physician who had the benefit of reviewing Plaintiff's EMG results from June 2008 which only showed mild deterioration in Plaintiff's left arm and shoulder. The ALJ accorded less weight to the opinions of Thomas's treating physicians because the ME's testimony undermined their opinions. For example, in a physical RFC assessment form

Plaintiff's treating physician, Dr. Ruben Agra, submitted to the Office of Disability Adjudication and Review, Dr. Agra indicated that the pain in Thomas's neck and shoulder required her to lie down at various times of the work-day, and restricted her ability to lift, carry, reach, handle, finger, push, pull, sit, stand and walk. (Tr. 297-98). Similarly, Dr. James Bedocs opined that Plaintiff's pain impeded her ability to lift, carry, sit, reach, handle, finger, feel, push and pull. (Tr. 292). But, contrary to these assessments, the ME testified that Plaintiff's impairments would not effect her ability to handle or finger with her left hand. The ALJ also noted that the ME did not find any limitations with regard to Thomas's ability to lift as long as it was not above shoulder level. Dr. Brahms further testified that there was no documentation to support Drs. Agra's or Bedocs's findings limiting Plaintiff's ability to walk and sit. With regard to Dr. Cheryl Katz, who opined that Plaintiff's neck and shoulder pain was disabling, ALJ Carissimi reasonably limited the weight given to her findings because the evidence in the record did not support the degree of pain noted by Dr. Katz. The ALJ commented that although Dr. Katz indicated that Thomas had paresthesia in her left arm, Dr. Katz only indicated that Plaintiff's grip and strength was slightly decreased. Additionally, ALJ Carissimi mentioned that despite Dr. Katz's observation that Plaintiff's range of motion was slightly decreased, Dr. Katz's treatment notes reflected that this movement only caused Thomas minimal discomfort. Therefore, the undersigned finds that ALJ Carissimi provided adequate reasons for the weight he assigned to the opinions of Plaintiff's treating physicians.

### 3. Hypothetical Question

Lastly, Thomas asserts that the ALJ's finding that she is capable of performing a limited range of light work is not supported by substantial evidence because it is based upon the VE's response to a flawed hypothetical question posed by the ALJ. Unfortunately, Plaintiff's argument

13

suffers from the same defects as her previous arguments by attacking the ALJ's prior decision, rather than the 2009 decision that is now before the Court. This error is particularly apparent because Plaintiff's argument here clearly mirrors the arguments she presented to the Court in 2008. (*Compare* Case No. 08-830, Doc. 15, at 18-21 *with* Pl.'s Br. at 20-23).[8]

Because the Court finds that the RFC announced by ALJ Carissimi is supported by substantial evidence in the record, the Court rejects Plaintiff's request to remand on this issue. Although Plaintiff asserted that she suffered from disabling pain, the ALJ reasonably discredited these allegations. The ALJ's hypothetical question posed to the VE reflected the RFC the ALJ announced after hearing the testimony of the ME. In response, the VE confirmed that a person with Plaintiff's RFC would be able to perform the duties of a sewing machine operator as well as a beautician. Although Thomas argues that her pain inhibits her ability to work, the ALJ had no obligation to include further restrictions in the hypothetical question he presented to the VE. So long as the ALJ's "hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (*citing Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987)). Thus, the VE's testimony provided substantial support for the ALJ's finding that Plaintiff could return to her past work as a hair stylist and seamstress. *See Varley,* 820 F.2d at 779 (finding

---

[8]Plaintiff's brief again cites to statements the ALJ made in his 2007 decision, which do not appear in his 2009 decision. For example, on page 22 of Plaintiff's brief, she states that ALJ Carissimi rejected Dr. Agra's findings after concluding that Dr. Agra "relied on the claimant's statements regarding pain and limitation rather than objective evidence to support the residual functional capacity she suggests" (Pl.'s Br. at 22); this statement appears on page 8 of ALJ Carissimi's 2007 decision. (Tr. 21). Plaintiff's brief also quotes another statement from the ALJ's 2007 decision, where he rejected Dr. Bedocs's findings after ruling that they were "not corroborated by the treatment he provided" (Pl.'s Br. at 22), which appears in the last sentence of page 7 in ALJ Carissimi's 2007 opinion. (Tr. 20).

that the VE's testimony constitutes as substantial evidence to support the ALJ's decision provided that the hypothetical question posed by the ALJ accurately portrays the claimant's impairments).

## VI. CONCLUSION

For the reasons stated herein, the Magistrate Judge orders that the Commissioner's final decision be AFFIRMED, and that judgment be entered in favor of the Commissioner.

IT IS SO ORDERED.

    /s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date: September 30, 2011.